UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
ANTAEUS ENTERPRISES, INC., et al.,

                Plaintiffs,

        -against-                              05 Civ. 6396 (LAK)

SD-BARN REAL ESTATE, LLC, et al.,

                Defendants.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

## MEMORANDUM OPINION

Appearances:

>   Daniel H. Weiner
>   Kristin B. Whiting
>   HUGHES HUBBARD & REED LLP
>   *Attorneys for Plaintiffs*

>   James W. Weller
>   Laurie Cascino
>   NIXON PEABODY LLP
>   *Attorneys for Defendants*

LEWIS A. KAPLAN, *District Judge.*

        This matter is before the Court on the motion of defendants SD-Barn Real Estate, LLC ("SD"), and L. John Davidson to dismiss for lack of personal jurisdiction.

*Facts*

The individual plaintiffs are former members of the board of directors of Pasteurized Egg Corporation ("PEC"). Plaintiff Antaeus Enterprises, Inc., is an investment vehicle belonging to one of them. Similarly, SD is an investment vehicle belonging to the individual defendant.

In 2002, plaintiffs and Davidson agreed, allegedly at a meeting in New York City, to extend debtor-in-possession financing ("DIP") to PEC. Davidson offered SD as a vehicle through which to make the loan. Accordingly, plaintiffs and Davidson loaned money to SD in exchange for promissory notes. SD in turn advanced the money to PEC, and PEC executed a note in favor of SD.

In 2003, PEC agreed to sell substantially all of its assets to National Pasteurized Eggs, L.L.C. ("NPE") in exchange for $200,000 in cash and a promissory note, payable to SD, in the amount of $592,250.73, which was equal to the balance due and owing on the original PEC note to SD, plus unpaid interest. SD distributed the cash remaining after payment of its attorneys to plaintiffs and Davidson and issued amended and restated promissory notes to each of the plaintiffs. Those notes obligate SD to pay to plaintiffs *pro rata* shares of any payments received by SD from NPE.

In due course, NPE made substantial payments to SD but SD allegedly has not discharged its obligation to distribute those payments to plaintiffs. Rather, according to plaintiffs, SD and Davidson have retained those sums for their own use. Plaintiffs therefore bring this action to recover those amounts. The complaint contains four claims for relief – the first for a declaration in respect of SD's obligations to remit to plaintiffs, the second for conversion, the third for breach of contract, and the last, against Davidson, for tortious interference with SD's contracts with plaintiffs.

*Discussion*

As defendants are citizens of New Hampshire and evidently have had no continuing presence in New York, plaintiffs pin their hopes for subjecting them to personal jurisdiction here entirely on the provision of the New York long arm statute that confers jurisdiction over persons who have transacted business here provided that the claim sued upon arises out of that transaction of business.[1]

The Second Circuit has summarized the criteria relevant to determining whether a defendant has transacted business in New York within the meaning of CPLR § 302(a), subd. 1:

> "The question of whether an out-of-state defendant transacts business in New York is determined by considering a variety of factors, including: (I) whether the defendant has an on-going contractual relationship with a New York corporation . . . ; (ii) whether the contract was negotiated or executed in New York . . . and whether, after executing a contract with a New York business, the defendant has visited New York for the purpose of meeting with parties to the contract regarding the relationship . . . ; (iii) what the choice-of-law clause is in any such contract . . . ; and (iv) whether the contract requires franchisees to send notices and payments into the forum state or subjects them to supervision by the corporation in the forum state . . . . Although all are relevant, no one factor is dispositive. Other factors may also be considered, and the ultimate determination is based on the totality of the circumstances."[2]

Here, there is at least a *prima facie* case that the defendants transacted business in New York in 2002, as plaintiffs have adduced evidence that the agreement to extend DIP financing to PEC and to use SD as the vehicle for doing so was made here. Moreover, in entering into that agreement, defendants embarked upon a relationship with and agreed to make payments to plaintiffs, two of whom are citizens of New York. In consequence, the limited showing that must be made at

---

[1] N.Y. CPLR § 302(a), subd. 1.

[2] *Agency Rent A Car Sys., Inc. v. Grand Rent A Car Corp.,* 98 F.3d 25, 29 (2d Cir. 1996).

this early stage to justify a conclusion that plaintiffs have made out a *prima facie* case of transaction of business in New York is present. But more is required.

The New York long arm statute confers specific rather than general jurisdiction. A plaintiff must establish not only that the defendant transacted business here, but also that the claim sue upon is one "arising from" that transaction of business.

As many courts have pointed out, determining whether a claim stands in sufficient proximity to the transaction of business in the forum state to permit the forum to exercise jurisdiction over the defendant with respect to the claim is not an exact science. It involves a judgment as to whether the cause of action is "'sufficiently related to the business transacted that it would not be unfair to deem it to arise out of the transacted business.'"[3] "To determine whether a sufficient nexus exists, a court must evaluate the 'totality of the circumstances surrounding defendants' activities in New York in connection with the matter giving rise to the lawsuit.'"[4]

Here, the plaintiffs' claims do not arise out directly out of the New York agreement to provide DIP financing to PEC. They are a consequence of SD's alleged default on the promissory notes issue in connection with the acquisition by NPE of PEC, and there is no suggestion that the NPE-PEC transaction had any connection with New York. Nevertheless, the notes on which SD allegedly has defaulted appear to have been issued to replace the notes that SD issued to document its obligation to pay over to the plaintiffs monies received from NPE in order to discharge its

---

[3] *PDK Labs, Inc. v. Friedlander*, 103 F.3d 1105, 1109 (2d Cir. 1997) (quoting *Hoffritz for Cutlery, Inc. v. Amajac, Ltd.*, 763 F.2d 55, 59 (2d Cir. 1985)).

[4] *Id.* (quoting *Hoffritz*, 763 F.2d at 60)); *see also Agency Rent A Car Sys.*, 98 F.3d at 31 (requiring a "substantial nexus" between the business transacted and plaintiff's cause of action).

obligations to the plaintiffs in respect of the DIP financing. The substance of the sequence of events therefore is that the SD notes now in suit were issued in satisfaction of SD's obligations undertaken in connection with the DIP loan, which was negotiated in New York. In these circumstances, the totality of the circumstances warrant the conclusion that the claims at issue here arose out of defendants' transaction of business in New York.

*Conclusion*

Defendants' motion to dismiss for lack of personal jurisdiction is denied.

SO ORDERED.

Dated: October 5, 2005

_____
Lewis A. Kaplan
United States District Judge

(The manuscript signature above is not an image of the signature on the original document in the Court file.)